## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**GINO G.,**

      **Plaintiff,**

                    **Case No. 3:20-cv-10537**

      **v.**                  **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Gino G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On December 1, 2016, Plaintiff filed an application for benefits, alleging that he has been disabled since June 25, 2016. R. 93, 109, 194−95. The application was denied initially and upon reconsideration. R. 126−31, 133−35. Plaintiff sought a *de novo* hearing before an administrative

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

law judge. R. 136. Administrative Law Judge ("ALJ") Richard West held a hearing on January 4, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 37−92. In a decision dated June 11, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 25, 2016, the alleged disability onset date, through the date of that decision. R. 15−31. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 10, 2020. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 3, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 14.[2] On March 4, 2021, the case was reassigned to the undersigned. ECF No. 15. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

3

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at \*4.  The ALJ decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec*., 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

5

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 43 years old on his alleged disability onset date. R. 30. Plaintiff met the

insured status requirements of the Social Security Act through December 31, 2021. R. 17. At

step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between

June 25, 2016, his alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff's degenerative disc disease, hypertension,

depressive disorder, and anxiety disorder were severe impairments. R. 18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

impairments that met or medically equaled the severity of any Listing. R. 18–20.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject

to various additional limitations. R. 20–30. The ALJ also found that this RFC did not permit the

performance of Plaintiff's past relevant work as a waiter and limousine driver. R. 30.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 75,00

jobs as a scale operator; approximately 40,000 jobs as a preparer; approximately 90,000 jobs as a

table worker —existed in the national economy and could be performed by an individual with

Plaintiff's vocational profile and RFC. R. 30–31. The ALJ therefore concluded that Plaintiff was

not disabled within the meaning of the Social Security Act from June 25, 2016, his alleged

disability onset date, through the date of the decision. R. 31.

Plaintiff disagrees with the ALJ's findings at steps two, four, and five and asks that the

decision of the Acting Commissioner be reversed and remanded with directions for the granting

of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No.

22; *Plaintiff's Reply Brief*, ECF No. 24. The Acting Commissioner takes the position that the

administrative decision should be affirmed in its entirety because the ALJ's decision correctly

applied the governing legal standards, reflects consideration of the entire record, and is supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 23.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

On April 4, 2019, Plaintiff presented to Ronald Bagner, M.D., for a consultative examination. R. 444–47. Upon physical examination, Dr. Bagner noted that Plaintiff ambulated at a reasonable pace, got on and off the examining table "with moderate difficulty, gets dressed and undressed without assistance, is not uncomfortable in seated position in the interview, does not use a cane or crutches, can heel toe walk." R. 444. Plaintiff's cervical spine had normal flexion, normal extension, 0-20 degrees lateral rotation to the left and 0-40 degrees lateral rotation to the right with 0-25 degrees lateral flexion to the left and to the right; pain was apparent on movement in the cervical region. R. 444–45. Plaintiff's biceps, triceps, and brachioradialis reflexes were 1+ bilaterally; there was no motor or sensory abnormality in the upper extremities. R. 445. Dr. Bagner expressly noted that Plaintiff's upper extremities (shoulders, elbows, forearms, wrists, and fingers) showed a normal range of movement. *Id.* Plaintiff could make fists and oppose his thumbs; his grips were rated as 5/5 bilaterally. *Id.* Plaintiff's back flexion was 0-50 degrees and extension and lateral flexion to the left and to the right were within normal limits. *Id.* Dr. Bagner noted pain on movement in the lower back, but no pain on straight leg raising. *Id.* Plaintiff's knee and ankle reflexes were 2+ bilaterally with no atrophy of thigh or calf musculature and no motor or sensory abnormalities in the lower extremities. *Id.* Plaintiff's hips and ankles showed a normal range of movement and both knees were stable with a normal range of movement and no effusion or localized tenderness. *Id.* Dr. Bagner went on to express his impression as follows:

Status, postop anterior cervical decompression and fusion. Note, the patient ambulates at a reasonable pace, gets on and off the examining table with moderate difficulty, dressed and undressed without assistance. He is not uncomfortable in seated position during the interview, does not use a cane or crutches, can heel and toe walk. Pain on movement of cervical region. Range of motion as noted. Anterior scar from previous surgery. The grips are as noted above. Pain on movement of the lower back. Range of motion lower back as noted. No pain on straight leg raising. The reflexes are as noted.

*Id*.

Dr. Bagner also completed an eight-page fill-in-the-blank and check-the-box form entitled, "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." R. 448–54. Dr. Bagner opined that Plaintiff could frequently (defined as one-third to thirds of the time) lift and carry up to 20 pounds, occasionally (defined as very little to one-third of the time) lift and carry 21 to 50 pounds, and never lift or carry more than 50 pounds. R. 448. Plaintiff could sit, stand, and walk up to two hours at a time without interruption and sit, stand, and walk each for a total of four hours total in an eight-hour workday. R. 449. According to Dr. Bagner, Plaintiff, who is right hand dominant, could frequently reach overhead and in all other directions, handle, finger, feel, and push/pull with both hands. R. 450. Plaintiff could also frequently use both his feet to operate foot controls. R. 451. Plaintiff could frequently climb stairs and ramps, balance, stoop, kneel, and crouch, but could never climb ladders or scaffolds or crawl. R. 452. Dr. Bagner's specialty is surgery. R. 454.

## V.   DISCUSSION

### A.   Step Two

Plaintiff first challenges the ALJ's step two determination, *i.e.,* that Plaintiff did not have a severe left upper extremity impairment. *Plaintiff's Memorandum of Law*, ECF No. 22. Plaintiff's argument is not well taken.

At step two, an ALJ determines whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

In the case presently before the Court, the ALJ decided in Plaintiff's favor at step two, finding that his degenerative disc disease, hypertension, depressive disorder, and anxiety disorder are severe. R. 18. Plaintiff insists that he has an additional left upper extremity impairment that is severe. *Plaintiff's Memorandum of Law*, ECF No. 22. As a preliminary matter, Plaintiff has not persuaded this Court that any deficit with his left upper extremity is not simply part of his degenerative disc disease, which the ALJ expressly found to be a severe impairment. R. 18. In any event, even assuming for the sake of argument that this condition constituted a separate impairment, the ALJ went on to evaluate Plaintiff's impairments, including any limitation in his ability to use his left upper extremity, through the remainder of the five-step sequential

evaluation, as discussed in more detail below. R. 18−31. Accordingly, even if the ALJ erred in not finding other severe impairments, any such error at step two is harmless based on this record. *See Salles*, 229 F. App'x at 145 n.2; *Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6.

**B.     RFC**

Plaintiff also argues that substantial evidence does not support the ALJ's RFC determination because it failed to include all of his physical and mental limitations. *Plaintiff's Memorandum of Law*, ECF No. 22; *Plaintiff's Reply Brief*, ECF No. 24. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

11

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant cannot climb ladders/ropes/scaffolds; can occasionally climb ramps/stairs, balance, kneel, stoop, crouch and crawl; and must avoid concentrated exposure to extreme cold. The claimant can understand, remember and carry out simple instructions; have occasional interaction with coworkers, supervisors and the general public; and deal with changes to essential job functions on an occasional basis.

R. 20.

In making this determination, the ALJ detailed years of record evidence regarding his physical impairments, including, *inter alia*, the fact that Plaintiff was involved in a motor vehicle accident in March 2014 and reported cervical pain radiating down the left arm with paresthesia and weakness, lumbar pain with no radicular symptoms, and headaches; a May 2014 MRI of the cervical spine that revealed a disc bulge at C4-C5 with effacement, disc herniation at C5-C6 with hypertrophy, effacement and moderate spinal stenosis mildly compressing the ventral cord and mild to moderate foraminal narrowing, and a disc bulge at C6-C7, although a MRI of the lumbar spine revealed no disc herniation, stenosis or significant neural foraminal narrowing; the fact that Plaintiff underwent a cervical facet block in January 2015, and a February 2015 examination showed a reduced range of motion of the cervical spine as well as positive Spurling (radiculopathy) test and sensation loss in the C6 distribution with grade 4 weakness in the left biceps and wrist extension on the left as well as diminished reflex in the biceps and brachioradialis; the fact that a February 2015 EMG was consistent with chronic active left sided C6 radiculopathy; the fact that Plaintiff underwent two cervical epidural injections in October 2015 but, at a follow-up examination the same month, continued to show reduced range of motion of the cervical spine, reduced sensation in the C5 and C6 distribution, reduced reflexes in

12

the biceps and brachioradialis, 4/5 weakness in left wrist extension and positive Spurling test, as well as a positive axial neck compression test; a March 2016 MRI of the cervical spine revealed a disc bulge at C4-C5 with effacement, annual tear and disc herniation at C5-C6 with hypertrophy with moderate spinal stenosis compressing the cervical cord and mild to moderate foraminal narrowing, and a disc bulge at C6-C7 abutting the thecal sac, while a discography was positive at C5-C6; the fact that Plaintiff underwent cervical fusion surgery in June 2016 and was referred to physical therapy; treatment notes from November 2016 that revealed that the cervical spine showed reduced range of motion as well as tenderness, guarding due to pain, and that the upper extremities showed intact reflexes throughout, except that the left biceps was reduced at 1+; the fact that additional physical therapy was recommended in December 2016, after an examination revealed positive impingement signs in the left shoulder, although an x-ray showed the instrumentation from the fusion surgery remained in good position; a March 2017 examination that revealed continued limited range of motion of the cervical spine as well as weakness in the biceps and wrist extensors on the left; April 2018 treatment notes that reflect that Plaintiff denied muscle aches, arthralgias/joint pain, back pain, weakness, numbness or fatigue and which indicated that Plaintiff had no tenderness in the neck as well as normal movement of all extremities and normal gait and station; similar follow-up examinations in May and August 2018; a report in December 2018 of pain with motion of the neck; and Dr. Bagner's April 2019 examination findings. R. 22–24.

The ALJ assigned partial weight to Dr. Bagner's opinion, R. 28, and went on to explain his findings regarding limitations flowing from Plaintiff's physical impairments:

> Overall, the record shows the claimant suffered cervical injuries secondary to a motor vehicle accident in March 2014. While he initially did not respond to conservative treatment, he maintained normal bulk and tone with no involuntary movements in the extremities as well as intact strength, except for the right biceps

and brachioradialis muscles which were initially 5-/5 and then 4/5. He also maintained normal gait, coordination and intact strength, sensation and reflexes in the lower extremities. The claimant's symptoms also improved after surgery in June 2016, with improvement in sensation. It is noted he continued to show reduced range of motion in the cervical spine as well as diminished reflexes and weakness on the *left*. However, the record shows no specialized treatment in 2018 or 2019, with only some pain with neck movement. Most recent examination in April 2019 shows intact grip/pinch strength, as well as normal motor and sensation in the upper extremities, although reflexes remain diminished and the cervical spine continues to show reduced range of motion. Regardless, the claimant was able to perform fine and gross manipulations. The lower extremities continue to show normal findings and gait has remained normal throughout. The record shows no evidence of atrophy, incoordination or tremors. Ultimately, the record supports a determination the claimant is limited to the demands of sedentary work, to account for his reduced ability to lift/carry heavy items. Additional postural and environmental limitations account for his reduced range of motion, reflexes and weakness. The claimant's pain is also accounted for by limiting the claimant to simple, unskilled work.

R. 24 (emphasis added).

Overall, the record shows the claimant's hypertension is generally controlled with treatment. While he had elevated blood pressure in April 2018, he acknowledge[d] he had not taken any medication in 8-9 months. Likewise, at follow-up in May 2018, he noted he had not been taking one of the medications. Regardless, the claimant's hypertension is controlled and he has consistently denied palpitations, shortness of breath or chest pain. There is also no evidence of hospitalizations or emergency care. Ultimately, any limitations resulting from his hypertension are accounted for in the residual functional capacity by limiting the claimant to sedentary work with additional postural and environmental limitations.

R. 25. The ALJ also considered the findings of the state agency medical reviewing physicians, assigning "partial weight" to these opinions because he found Plaintiff "is slightly more limited than determined by DDS." R. 28. The ALJ therefore limited Plaintiff "to sedentary work, due to his lifting/carrying restrictions" and "incorporated the postural limitations, which are consistent with the record, which shows reduced range of motion in the spine as well as diminished reflexes and strength on the left side." *Id*.

The ALJ also considered evidence relating to Plaintiff's mental impairments, summarizing as follows:

14

> Overall, the record shows the claimant's mental impairments are largely controlled, with noted response to treatment. Specifically, the record shows the claimant reported improvement in his symptoms with medication management and noted no interference with his activities of daily living. The record also does not show any hospitalizations or emergency care treatment for mental health issues. Examinations have also shown within normal findings, with notable logical and coherent thought processes, intact thought content with no signs of psychosis, good concentration and focus, good insight and judgment, full orientation and normal psychomotor activity. While he reports difficulty with interpersonal relationships, social interaction and anger, the record suggests the claimant was able to interact appropriately with practitioners. While he had impaired memory and fluctuating concentration at the consultative examination, subsequent treatment notes indicate his concentration was good and there was no suggestion his memory was impaired. The consultative examiner also still determined the claimant was able to perform at least simple tasks and maintain a schedule. The function reports also indicate the claimant does not need reminders to take medication or to go places and is able to travel independently (Exhibits 4E, 5E). Ultimately, the record supports a determination the claimant is able to perform the mental demands of simple, unskilled work in a work environment that only has occasional changes to essential job functions. His difficulty with anger/social interaction is addressed by limiting the claimant to only occasional interaction with others.

R. 27; *see also* R. 28 ("Concerning the claimant's mental impairments, the undersigned also limits the claimant to simple, unskilled work in an environment with reduced social contact, as the record shows [] some issues with anger and concentration for complex tasks."). The ALJ also assigned "great weight" to the opinions of consultative examiner Kim Arrington, Psy.D., in finding that Plaintiff "is able to perform simple directions and instructions, as the record shows the claimant is able to perform basic activities of daily living" and that Plaintiff "has shown improvement with treatment with noted good concentration and focus as well as logical, coherent thought processes, intact thought content, full orientation and average fund of knowledge and intellectual functioning." R. 28. The ALJ went on to explain that the findings regarding Plaintiff's RFC are "supported by the objective medical evidence and partially by the opinions of the state agency consultants . . . . While it is reasonable to find that the claimant's alleged impairments would preclude more than the full range of work, the objective evidence does not

establish that the claimant would be precluded from all work activity." R. 30. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

However, Plaintiff complains that "the ALJ adopted an RFC that failed to incorporate any limitations whatsoever for the well-documented left upper extremity impairment." *Plaintiff's Memorandum of Law*, ECF No. 22, p. 14; *see also Plaintiff's Reply Brief*, ECF No. 24, pp. 2−3 ("[T]here are no left upper extremity limitations in the RFC[.]"). Plaintiff's argument is not well taken. As detailed above, the ALJ expressly considered Plaintiff's left upper extremity (and limitations of the left side in general as well as any related limitations) multiple times throughout his RFC analysis. R. 21−24, 28. Plaintiff appears to suggest that the ALJ should have included a restriction to only occasional reaching with the left arm - a limitation that would preclude all sedentary, unskilled work, according to the vocational expert. *Plaintiff's Memorandum of Law*, ECF No. 22, pp. 9 (citing R. 91), 16 (same), 22 (same); *Plaintiff's Reply Brief*, ECF No. 24, p. 3 (citing R. 91). However, Plaintiff points to no medical opinion or functionality finding supporting such a limitation. *See id*. Notably, as previously discussed, an ALJ need include only "credibly established" limitations, *i.e.*, limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted). Absent any credible evidence that Plaintiff has such limitations, "'it would be error to include limitations not credibly established by the record when relying on a vocational expert's testimony to make a

16

disability determination.'" *Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J. May 25, 2017) (quoting *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)); *cf. Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (stating that a "hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence") (citation omitted); *Harris v. Comm'r of Soc. Sec.*, No. CV 17-3964, 2018 WL 5801546, at *3 (D.N.J. Nov. 5, 2018) ("While the vocational expert testified in response to a hypothetical posed by Plaintiff's counsel— that a person who is occasionally unable to respond appropriately to supervisors would indeed be unemployable—there is no evidence in the record to support Plaintiff's contention that there are times in the day that she would be wholly unable to interact with supervisors in an appropriate manner, or that Plaintiff would engage in frequent or occasional inappropriate conduct in dealing with them."). Accordingly, because the ALJ did not include these limitations in Plaintiff's RFC, the ALJ properly disregarded the vocational expert's testimony regarding these limitations.

Plaintiff also complains that, although the ALJ found that Plaintiff had lifting/carrying restrictions, "there is no discussion on how much Plaintiff can lift or carry." *Plaintiff's Memorandum of Law*, ECF No. 22, p. 19 (citing R. 28). Plaintiff further contends that the ALJ "discredit[ed]," as unsupported by the evidence, Dr. Bagner's opinion regarding Plaintiff's four-hour limitation in sitting, standing, and walking, but failed to provide any discussion as to how he came to the conclusion that Plaintiff was limited to sedentary work. *Id*. Plaintiff goes on to

argue that the ALJ's RFC determination was flawed because he did not conduct a function-by-function analysis. *Id.* at 18−20 (citing *Pearson v. Barnhart*, 380 F. Supp. 2d 496 (D.N.J.[3] 2005)).

Plaintiff's arguments are not well taken. ALJs must evaluate "every medical opinion." 20 C.F.R. § 404.1527(c).[4] "Medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Id.* at § 404.1527(a)(1). In assigning weight to a particular medical opinion, an ALJ considers the following factors: (1) the examining relationship; (2) the treatment relationship, including length of treatment and nature and extent of the treatment; (3) the supportability of the evidence; (4) the consistency with other evidence; (5) the specialization of the professional; and (6) other factors brought to the attention of the ALJ. *Id.* at § 404.1527(c)(1)–(6). However, "an ALJ need not explicitly discuss each factor" in the decision. *Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018) (collecting cases). "Instead, an ALJ need only 'explain his evaluation of the medical evidence for the district court to meaningfully review whether [the ALJ's] reasoning accords with the regulation's standards.'" *Id.* (quoting *Laverde v. Colvin*, No. 14-cv-1242, 2015 WL 5559984, at *6 n.3 (W.D. Pa. Sept. 21, 2015)); *see also Podvorec v. Berryhill*, No. 2:17-CV-00137, 2017 WL 3705062, at *8 (W.D. Pa. Aug. 28, 2017) ("Although the ALJ did not explicitly spell out all of these factors in her decision, it contains enough detail for this Court to meaningfully review it.").

---

[3] Plaintiff incorrectly represents this case as one authored by the United States Court of Appeals for the Third Circuit. *Id.* at 19; *see also Plaintiff's Reply Brief*, ECF No. 24, p. 4 (same).

[4] This regulation applies to claims filed before March 27, 2017. 20 C.F.R. § 404.1527. As previously noted, Plaintiff's claim was filed on December 1, 2016.

In the case presently before this Court, the ALJ specifically considered Dr. Bagner's examination findings, R. 23–24, and went on to explain why he assigned "partial weight" to his opinion:

> Consultative examiner Ronald Bagner, M.D. determined the claimant was able to lift/carry up to 20 pounds frequently and up to 50 pounds occasionally as well as sit, stand and walk 4 hours each in a workday. The doctor also determined the claimant is able to frequently reach, handle, finger, feel and push/pull with both arms/hands as well as frequently operate foot controls with both feet. The doctor determined the claimant should never climb ladders/scaffolds or crawl but can frequently climb stairs/ramps, balance, stoop, kneel and crouch (Exhibit 15F).

> As noted above, the undersigned limits the claimant to sedentary work, as the record suggests the claimant should not lift/carry heavy items due to his neck injury. The limitation to 4 hours of sitting in total is also not supported by the record, as the record does not suggest any difficulty with same, other than claimant complaint. However, treatment notes in 2017 and 2018 do not indicate any reports of difficulty with sitting and at the 2019 consultative examination the claimant reported difficulty driving due to limitations in movement of the cervical spine; the claimant did not report sitting limitations. The claimant's wife also did not mention sitting limitations in the Function Report (Exhibit 5E). Ultimately, partial weight is accorded the findings as discussed.

R. 28. As detailed above, in discounting portions of Dr. Bagner's opinion (including limitations on Plaintiff's ability to sit, stand, and walk), the ALJ expressly considered Dr. Bagner's relationship to Plaintiff, the supportability of the opinion, and the consistency of Dr. Bagner's opinion with other evidence, including Dr. Bagner's own findings, treating source records, and other record evidence. *Id*. Notably, although Plaintiff fails to mention this fact, the ALJ also discounted Dr. Bagner's opinion to Plaintiff's benefit when limiting Plaintiff to sedentary work because of Plaintiff's limitations in his ability to lift/carry heavy items. *See id*. In short, the Court finds no error in the ALJ's evaluation of Dr. Bagner's opinion. *See* 20 C.F.R. § 404.1527(c)(1), (3), (4); *Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) (finding that the ALJ "appropriately gave less weight" to a medical opinion that concluded that the plaintiff "was limited in his work abilities, [because] his report lacked adequate support for this determination"

and because that "conclusion conflicted with both [the plaintiff's] self-reported daily activities and [the physician's] own positive reports after [] surgery"); *Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592, 2018 WL 6178862, at \*6 (D.N.J. Nov. 27, 2018) (finding that substantial evidence supported the ALJ's decision to discount a treating physician's opinion where, *inter alia*, the "opinion was not consistent with the Plaintiff's own testimony"); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at \*7 (D.N.J. Jan. 31, 2019) ("The ALJ here reasonably discounted the opinion at issue upon a reasonable reading of seemingly contradictory treatment notes.").

To the extent that Plaintiff complains that the ALJ failed to perform a "function-by-function" assessment as required by SSR 96-8p, Plaintiff's arguments are not well taken. An ALJ's RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p. However, an ALJ is not required "to use particular language or adhere to a particular format in conducting [that] analysis[;]" instead, the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v*, 364 F.3d at 505; *see also Diciano v. Comm'r of Soc. Sec.*, No. 1:18-CV-17383, 2019 WL 6696523, at \*5 (D.N.J. Dec. 9, 2019) ("The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis.") (citations omitted). Here, the ALJ detailed the record evidence in a narrative discussion throughout several single-spaced pages, considered Plaintiff's exertional and non-exertional functional limitations flowing from his impairments, and crafted an RFC that reflected those limitations. R. 20–30. For the reasons previously discussed, this Court concludes that substantial

20

evidence supports the ALJ's RFC determination. Moreover, and based on this record, this Court also concludes that the ALJ complied with the requirements of SSR 96-8p. *See Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 134 (3d Cir. 2021) ("Prior to making his determination regarding Cosme's RFC, the ALJ reviewed the evidence in the record as he discussed Cosme's physical and mental abilities and explained the evidence he relied upon in reaching his decision and the weight accorded to it. Therefore, there is substantial evidence that the ALJ properly considered Cosme's physical and mental abilities in a function-by-function assessment prior to his RFC determination."); *Jones v*, 364 F.3d at 505; *Glass v. Comm'r of Soc. Sec.*, No. CV 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("[T]he United States Court of Appeals for the Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record.") (collecting cases); *cf. Chiaradio v. Comm'r of Soc. Sec.*, 425 F. App'x 158, 161 (3d Cir. 2011) (affirming the ALJ's RFC determination, despite the fact that "the ALJ did not make a task by task analysis," where the ALJ's RFC finding was supported by substantial evidence in the record, and the ALJ's "overall review carefully considered [the claimant's] past relevant work and the ALJ assessed what [the claimant] could reasonably do").

In challenging the RFC determination, Plaintiff also contends that the RFC failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace, *i.e.,* limitations that the ALJ found at step three of the sequential evaluation. *Plaintiff's Memorandum of Law*, ECF No. 22, pp. 22−24 (citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004)). This Court disagrees. "[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir.

21

2019) (explaining that this conclusion "flows directly from our decision in *Ramirez*"). In this case, the ALJ offered a "valid explanation" for the finding that Plaintiff would be limited to simple instructions. R. 20, 27 (noting that although Plaintiff "had impaired memory and fluctuating concentration at the consultative examination, subsequent treatment notes indicate his concentration was good and there was no suggestion his memory was impaired"; that the consultative examiner determined that "the claimant was able to perform at least simple tasks and maintain a schedule"; that the function reports reflected that Plaintiff "does not need reminders to take medication or to go places and is able to travel independently"; and that, "[u]ltimately, the record supports a determination the claimant is able to perform the mental demands of simple, unskilled work in a work environment that only has occasional changes to essential job functions"), 28 ("Concerning the claimant's mental impairments, the undersigned also limits the claimant to simple, unskilled work in an environment with reduced social contact, as the record shows some issues with anger and concentration for complex tasks."). This restriction sufficiently captured Plaintiff's moderate limitations in concentration, persistence, and pace, and *Ramirez* does not require remand or otherwise undermine the ALJ's RFC finding. *See Hess*, 931 F.3d at 211; *Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (finding "hypothetical question accurately conveyed all of" the plaintiff's limitations where the hypothetical individual could understand, remember, and carry out simple instructions, which reflected the plaintiff's moderate difficulties in concentration).

Plaintiff apparently insists that the RFC should also have included a limitation based on a need for breaks, although he does not specify the details of that need. *Plaintiff's Memorandum of Law*, ECF No. 22, pp. 23−24 (citing, *inter alia* POMS DI 34001.032, which addresses mental disorders, including paragraph B criteria addressing, *inter alia*, concentration, persistence, or

maintaining pace). This Court disagrees. As a preliminary matter, "[t]hese POMS . . . provisions do not aid [Plaintiff], however, because they lack the force of law and create no judicially-enforceable rights." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007); *see also Burke v. Comm'r of Soc. Sec.*, No. CV 19-14148, 2020 WL 2989081, at *3 (D.N.J. June 4, 2020) ("[S]tatements in POMS do not have the force of law."). Plaintiff's assertion that his "treating physician opined Plaintiff would 'need frequent breaks in all activities of daily living' due to 'his severe pain'" is also unavailing. *Plaintiff's Memorandum of Law*, ECF No. 22, p. 23 (quoting R. 369). For claims filed before March 27, 2017,[5] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir.

---

[5] As previously noted, Plaintiff's claim was filed on December 1, 2016. For claims filed after March 27, 2017, the regulations eliminated the hierarchy of medical source opinions that gave preference to the opinions of treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In the case presently before the Court, this "treating physician," Steven Waldman, M.D., stated, in relevant part, in a letter dated July 12, 2017, as follows:

This patient underwent an ACDF on 6-28-2016. He returned following the procedure on multiple occasions with minimal relief. I previously opined that the patient is unable to work in any physically demanding or laborious type of employment. The patient was recently seen on March 21, 2017 and May 30, 2017. I spoke with him telephonically more recently. On all occasions, he has continued to demonstrate limited range of motion of the cervical segment and weakness on the left manual motor testing. He has continued with physical therapy, Medrol, Dosepak, and Tramadol. He has not improved his condition from any of the therapy or pain medication as well as the oral NSAIDs.

The patient advises that he has attempted to return to work including working at his family restaurant as a host where he would sit for extended periods, as well as a light duty position answering phones. He has tried working in a kitchen which required standing and has found that he is unable to do any of the above in any capacity The patient has elected to file for permanent disability and is presently awaiting a response from SSD. I support this entirely as he is unable to compete in the open labor market due to his severe pain and *need for frequent breaks in all activities of daily living.*

While we previously opined that Mr. [G.] may be capable of sedentary employment, it is prudent for the [sic] him to remain out of work permanently at this time. The patient continues to experience difficulty and for both safety purposes as well as his physical health it is appropriate for him to avoid any further attempts to work as doing so has resulted in higher levels of aggravating and incapacitating pain during the days that follow The patient is susceptible to the possibility of flare ups as well as significant and major types of exacerbations or aggravations of the cervical spine injury he previously sustained on 3/20/14 and following his surgery. For the safety and wellbeing of the patient he should avoid labor in its entirety at this time.

The patient is currently being seen for any new or evolving disc changes and the possible onset of adjacent level disease as the ACDF was more than one year ago. I have requested an MRI without contrast and authorization for trigger point injections The patient has attempted to return to sedentary employment and based upon the patient's unsuccessful attempts it appears within a reasonable degree of medical probability that he is incapable of returning to the labor force, even under less strenuous circumstances at this present time. Statistically speaking and from my medical perspectives it is extraordinarily unlikely Gino can return to gainful employment of any sort and therefore I must consider him to be permanently and totally disabled.

R. 369 (emphasis added), 418 (duplicate). The ALJ expressly considered Dr. Waldman's opinion

and explained why he discounted that opinion:

> As for the opinion evidence, in a report issued in February 2017 by treating practitioner Steven P. Waldman, M.D., the doctor advised the claimant was unable to continue work as a livery driver or any other physically demanding or laborious type of employment. Another report was issued in May 2017 by treating practitioner Aron Rovner, M.D. wherein the doctor determined the claimant was incapable of performing his prior work duties as a limousine driver but that he could possibly perform sedentary type employment at most. However, Dr. Waldman issued another letter in July 2017 finding the claimant was unable to compete in the open labor market due to severe pain and *the need for frequent breaks*. It was noted that while it was previously determined the claimant was able to perform sedentary type employment, it was now determined the claimant should remain out of work due to his continued difficulties resulting in safety issues and the possibility of aggravation of his condition. It was reported the claimant is susceptible to flare-ups as well as significant exacerbations of the cervical spine and, as such, for the safety and well-being of the claimant, he should avoid labor entirely at this time. The doctor determined the claimant was permanently and totally disabled (Exhibits 9F, 11F).
>
> The undersigned notes that Dr. Waldman and Dr. Rovner *fail to provide a detailed explanation as to the type and extent of the claimant's limitations and merely provide conclusory statements of disability of no probative value*. The statement that the claimant is susceptible to flare-ups and cannot even perform sedentary work appears to rely on the doctor's own beliefs of the competitive work environment and is given no weight. The record shows the claimant's condition has remained essentially stable since his surgery in June 2016, with no noted exacerbations and no specialized treatment. However, the doctors' concerns regarding heavy exertion and possible exacerbation have been considered. Ultimately, the record supports a determination the claimant is able to perform work at least at the sedentary exertional level.

R. 28–29 (emphasis added). Because Dr. Waldman stated that Plaintiff was unable to work

because of his "need for frequent breaks in all activities of daily living," but failed to specify the

frequency or length of such breaks, R. 369, 418, the ALJ properly found that, *inter alia*, Dr.

Waldman "fail[ed] to provide a detailed explanation as to the type and extent of the claimant's

limitations and merely provided conclusory statements of disability of no probative value." R.

29; *see also Perry v. Saul*, No. 1:19-CV-1923, 2021 WL 1701300, at *17 (M.D. Pa. Apr. 29,

2021) (finding that the ALJ "adequately discussed" the medical opinions and weight assigned to such opinions where, *inter alia*, the ALJ considered an opinion from a treating physician "but she concluded that it had little evidentiary weight due to the fact that no specific functional limitations were noted"); *Cynthia D. v. Saul*, No. 1:19-CV-03075-JTR, 2020 WL 3620091, at *4 (E.D. Wash. Apr. 28, 2020) ("With respect to Dr. Pellicer's opinion that Plaintiff could stand or walk for six hours in a workday with frequent breaks, Dr. Pellicer failed to explain what she meant by 'frequent.' It is unclear whether she was indicating more frequent breaks than would be normally allowed throughout the workday. Because this statement is vague and imprecise, the Court finds the ALJ was not required to credit or reject it."); *Assenat v. Berryhill*, No. 7:15CV00596, 2017 WL 1383941, at *4 (W.D. Va. Mar. 24, 2017) (finding that the opinion that the claimant "needs frequent rest breaks" is vague). The Court therefore finds no error with the ALJ's assessment of Dr. Waldman's opinion. *See id.*; *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner."); *cf. Grella*, 2014 WL 4437640, at *18 ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record.").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of the opinions of Dr. Bagner's and Dr. Waldman.

### C.     Step Five

Finally, Plaintiff challenges the ALJ's s step five determination, arguing that the Commissioner failed to carry his burden at that stage because the hypothetical questions posed to the vocational expert, which included the ALJ's RFC determination, failed to include all of Plaintiff's claimed limitations related to his left upper extremity, including the limitation of only occasional reaching with his left upper extremity. *Plaintiff's Memorandum of Law*, ECF No. 22, pp. 9−16, 22; *Plaintiff's Reply Brief*, ECF No. 24, pp. 1−3. At step five, an ALJ must decide whether the claimant, considering his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike at the first four steps of the sequential evaluation process, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id.* at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny,* 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak,* 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an

ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 90. The vocational expert responded that the jobs of scale operator, preparer, and table worker could be performed by such a claimant. *Id.* For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical question

is that all her alleged impairments were not addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

In short, the Court finds that the Commissioner has carried his burden at step five of the sequential evaluation and concludes that substantial evidence supports his determination in this regard.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  January 28, 2022                            *s/Norah McCann King*
                                               NORAH McCANN KING
                                               UNITED STATES MAGISTRATE JUDGE